Michelle Lynn VASQUEZ, Appellant,

v.

**TEXAS DEPARTMENT OF PROTECTIVE & REGULATORY SERVICES, Appellee.**

No. 01–04–00751–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 30, 2005.

---

William B. Connolly, William B. Connolly & Associates, Houston, TX, for Appellant.

Sandra D. Hachem, Sr. Asst. Co. Atty., Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

Appellant, Michelle Lynn Vasquez, appeals the trial court's judgment terminating the parent-child relationship between her and her child, Z.M. We determine whether the evidence at trial was legally and factually sufficient to support the termination order's finding that appellant endangered Z.M. and that the termination of appellant's parental rights was in the best interest of Z.M. *See* Tex. Fam.Code Ann. § 161.001(1)(E), (2) (Vernon Supp.2005). We affirm.

## Facts

Appellant is the mother of four children: M.F.M., M.R.M., M.D.V., and Z.M. Appellant has a long history with the Texas Department of Protective and Regulatory Services ("TDPRS").[1] That history began in June of 2001, six months before M.D.V. was born with marijuana in her system, when TDPRS received a report that M.F.M. and M.R.M. had been exposed to drugs and left unsupervised while appellant slept and that M.F.M. had drunk lighter fluid. Between this time and April 1, 2002, TDPRS alleged four instances of neglectful or abusive conduct on the part of appellant with regard to her children. In April 2002, a petition was filed against appellant on behalf of her three children as a result of continued drug use and several incidents of negligent supervision. This included an occasion on which M.R.M. wandered from home onto a sidewalk of a busy street and was brought to a nearby mall by persons who found M.R.M. and thought M.R.M. was missing and in danger. TDPRS took emergency custody of the children. In response to the petition in April, appellant signed a family service plan on June 5, 2002, in which she agreed to participate in parenting classes, to submit to random urinalysis testing, and to obtain and to maintain appropriate housing and stable employment. Appellant agreed to temporary orders giving custody of her children to TDPRS. Even though appellant completed the parenting classes and counseling, she continued to use marijuana and prescription drugs for recreational use.

After Z.M. was born, on July 9, 2003, appellant took a drug and alcohol assessment and was admitted for in-patient treatment. Carrie Coleman, an in-home family-based case worker, was assigned to assist appellant upon her referral to Family–Based Safety Services with the goal of returning appellant's other three children to her. Coleman met appellant for the first time on September 12, 2003, after numerous unsuccessful attempts to get together with appellant. Appellant was uncooperative with some of Coleman's recommendations, including some of those concerning child-proofing her residence. Sometime in September 2003, appellant's children were returned to her home. In October, appellant missed five appointments with Coleman. On one appointment when Coleman went to appellant's residence, Coleman observed M.D.V. opening the door to the outside by herself. On another appointment, Coleman observed appellant on the phone in the dining room while Z.M. was left untended in an infant seat next to a bathtub filled with water in which another child was bathing. During several appointments, Coleman was of the opinion that appellant was high. In November 2003, appellant missed three appointments. In December, appellant missed two more appointments with Coleman. During this time,

---

1. TDPRS is now known as the Department of Family and Protective Services. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.27, 2003 Tex. Gen. Laws 611, 641.

Turning Point Counseling Services made numerous attempts to call appellant to schedule a random urinalysis test. For example, Turning Point left three messages before appellant appeared on November 14, 2003. On that date, appellant tested positive for marijuana. Turning Point left four messages before appellant appeared for another test in December 2003, which appellant passed. On January 15, 2004, Z.M. was taken into possession by TDPRS.

## Sufficiency of the Evidence

In her first issue presented for review, appellant contends that the evidence was legally and factually insufficient to terminate parental rights to her child, Z.M. Specifically, appellant contends that the evidence was legally and factually insufficient to prove by clear and convincing evidence that appellant engaged in conduct that endangered the physical or emotional well-being of Z.M. under section 161.001(1)(E) of the Texas Family Code. In her second issue presented for review, appellant contends that the evidence was legally and factually insufficient to prove by clear and convincing evidence that termination of appellant's parental rights was in the best interest of Z.M.

### A. Standards of Review

In termination-of-parental-rights cases, "Due Process requires that [TDPRS] support its allegations [of termination] by at least clear and convincing evidence" in order to reduce the risk of erroneous termination. *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982); *In re B.L.D. & B.R.D.*, 113 S.W.3d 340, 353–54 (Tex.2003). "Clear and convincing evidence" is defined as that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or convic-

tion as to the truth of the allegations sought to be established. TEX. FAM.CODE ANN. § 101.007 (Vernon 2002).

### 1. Legal Sufficiency

When an appellant attacks the legal sufficiency of an adverse judgment on an issue for which she did not have the burden of proof, that appellant must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In parental-rights-termination cases, the standard of review for legal sufficiency is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the matter on which TDPRS bears the burden of proof. *In re J.F.C*, 96 S.W.3d 256, 266 (Tex.2002). In reviewing a no-evidence challenge, we consider the evidence in a light most favorable to the verdict, assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could have done so, and disregard all contrary evidence that a reasonable fact finder could have disbelieved or found to be incredible. *Id.; In re Guardianship of Hinrichsen*, 99 S.W.3d 773, 781 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

### 2. Factual Sufficiency

When an appellant attacks the factual sufficiency of an adverse finding on an issue on which the opposing party had the burden of proof, that appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In analyzing factual sufficiency, we consider whether the disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 265. A factual-sufficiency challenge will be overruled if, considering all of the evidence in the record—both that which supports and

that which contradicts the trial court's finding—the fact finder reasonably could form a firm conviction or belief that the parent committed one of the alleged grounds of termination and that the termination of parental rights is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 28–29 (Tex.2002).

## B. Findings Subject to Challenge

A court may base a termination of parental rights upon a finding that a parent engaged in conduct described in any subsection of Family Code section 161.001(1), plus a finding that the termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2); *In re L.M.*, 104 S.W.3d 642, 647 (Tex.App.-Houston [1st Dist.] 2003, no pet.). The trial court's termination order contains findings by the trial court that termination was in Z.M.'s best interest and that appellant had engaged in conduct or knowingly placed Z.M. with persons who engaged in conduct that endangered the physical or emotional well-being of Z.M. These findings satisfy the requirements of section 161.001(1)(E) and (2) and also conform to the oral findings made by the trial court at the conclusion of the termination hearing.

■ TDPRS contends that the trial court's judgment may be upheld upon proof supporting any subsection of 161.001 that was pleaded, even though some of those pleaded subsections were not found by the trial court. In particular, TDPRS argues that this Court must affirm the trial court's judgment on the basis of subsection 161.001(1)(D), which was also pleaded and is supported by evidence, but which ground for termination appellant has not challenged on appeal. TDPRS's argument would have had merit if the trial court had found both subsections (D) and (E) in its termination order. *See Edwards v. Dep't of Protective Servs.*, 946 S.W.2d

130, 135 (Tex.App.-El Paso 1997, no writ). Its argument would also have had merit if a jury had returned a broad-form verdict in a case in which several grounds for termination, including subsection (D), had been alleged. *See In re C.H.*, 25 S.W.3d 38, 48 (Tex.App.-El Paso 2000), *rev'd on other grounds*, 89 S.W.3d 17 (Tex.2002). TDPRS appears to confuse the general rule in civil cases that findings should not be made in the judgment with the requirement that the findings in section 161.001 of the Texas Family Code be made in a parental-rights-termination order. *See In re A.I.G.*, 135 S.W.3d 687, 694 (Tex.App.-San Antonio 2003, no pet.). If the trial court's findings could be disregarded, the general order of termination would be similar to a general verdict in a trial to the court that could be upheld upon sufficient evidence of any ground pleaded. We hold, however, that a parental-rights-termination order can be upheld only on grounds both pleaded by TDPRS and found by the trial court. Therefore, we decline TDPRS's invitation to uphold the trial court's termination order on a ground different from that stated in the order. Accordingly, appellant must show that there is no or insufficient evidence either that she engaged in the conduct described in section 161.001(1)(E) of the Family Code or that termination was in the child's best interest under section 161.001(2).

## C. Section 161.001(1)(E)

■ Section 161.001(1)(E) of the Family Code provides that a court may terminate the parent-child relationship if the court finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM.CODE ANN. § 161.001(1)(E). "Endanger" means to ex-

pose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Although such endangerment requires more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *Id.* Endangerment may be satisfied by showing that a parent engaged in a "course of conduct" that endangered the child's physical or emotional well-being. *In re U.P.*, 105 S.W.3d 222, 233 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *In re J.O.C.*, 47 S.W.3d 108, 113 (Tex.App.-Waco 2001, no pet.). The manner in which a parent treats other children in the family can be considered in deciding whether that parent engaged in a course of conduct that endangered the physical or emotional well-being of a child. *In re D.L.N.*, 958 S.W.2d 934, 939 (Tex.App.-Waco 1997, pet. denied).

At the outset, appellant concedes that the evidence arguably supports termination for neglect under section 161.001(1)(D). Tex. Fam.Code Ann. § 161.001(1)(D) ("knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"). We agree with appellant that this finding was not made, however. In regard to the section 161.001(1)(E) finding, appellant acknowledges the existence of evidence showing her neglect of other children and of her drug use, but claims that there is no evidence that appellant's conduct endangered Z.M. or that appellant placed Z.M. with others who engaged in conduct that endangered Z.M.

TDPRS does not contend, nor does any evidence show, that appellant placed Z.M. with others who engaged in conduct endangering Z.M. TDPRS argues that the primary conduct at issue in this case is the evidence of appellant's illegal drug use before and after the birth of Z.M., and after TDPRS had worked with appellant for over a year trying to reunite her with her children. TDPRS points to appellant's marijuana use after pregnancies with her first two children and during her pregnancy with her third child, resulting in M.D.V.'s being born with marijuana in her system. TDPRS also relies on appellant's relapse in November 2003, four months after Z.M. was born. TDPRS argues that appellant's deliberate and voluntary decision to continue to use illegal drugs was dangerous to Z.M. because it exposed Z.M. to the possibilities that her supervision would be impaired by drug use and that appellant would be arrested for using illegal drugs.

We do not write on a blank slate in this case. The trial below was actually a joint trial at which appellant's parental rights to both Z.M. and M.D.V. were terminated. The appeal of the termination of appellant's parental rights to M.D.V. was recently decided by our sister court in *In re M.D.V.*, No. 14–04–00463–CV, 2005 WL 2787006 (Tex.App.-Houston [14th Dist.] Oct. 27, 2005, no pet.) (not designated for publication). Under the same evidence that is before us, the termination of appellant's parental rights to M.D.V. was upheld, and we agree with the decision of our sister court. Although the facts are more aggravated regarding appellant's endangerment of M.D.V., who was born with marijuana in her system and who was the child left unattended in a bathtub full of water, we must consider appellant's treatment of M.D.V. in considering whether appellant engaged in a course of conduct that endangered the physical or emotional well-being of Z.M. We note that, although the court in *In re M.D.V.* relied partially on appellant's having actually injured M.D.V. by her use of marijuana during her pregnancy, resulting in marijuana's being

in M.D.V.'s system at her birth, the court went further to state: "The trial court could have formed a firm belief or conviction that any drug use while the children were in appellant's care jeopardized or exposed them to loss or injury." *Id.* Moreover, although the court might have focused its holding only on appellant's drug use, it squarely based its holding on both appellant's drug use and appellant's failure to adequately protect or to supervise her children. *Id.*

Despite there being no direct evidence of appellant's drug use or neglect actually injuring Z.M., TDPRS presented evidence that appellant engaged in a course of conduct that endangered Z.M.'s physical and emotional well-being. The evidence at trial supporting this conclusion includes: (1) a continued pattern of drug use without regard for the effects that it had on the children, including one child's having tested positive for drugs at birth and the appearance of appellant's having been "high" while caring for the children, including Z.M., as noted by a case worker during visits to the home; (2) appellant's failure to remain drug-free while under TDPRS's supervision, knowing that such conduct could place her children, including Z.M., at risk; and (3) the case worker's observation of incidents indicating appellant's negligent supervision (Z.M.'s being left unattended near a filled bathtub with another child in the tub and M.R.M.'s exiting the home into high-traffic areas), without appellant's showing a willingness to take corrective measures, such as child-proofing the home.

We hold that the evidence, viewed in the light most favorable to the verdict, is such that a fact finder reasonably could have formed a firm belief or conviction about the truth of appellant's endangerment of Z.M., which TDPRS had the burden of proving by clear and convincing evidence.

Thus, we hold that the evidence is legally sufficient to show that appellant endangered Z.M. We also hold that, considering all of the evidence, including evidence on which appellant relies to contradict the jury's verdict, a reasonable fact finder could have formed a conviction that appellant endangered Z.M. Thus, we hold that the evidence is factually sufficient.

Accordingly, we overrule appellant's first issue presented for review.

### D. Best Interest of Z.M.

In determining whether termination is in the child's best interest, we may consider several factors, including, but not limited to, (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) the stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *See In re L.M.,* 104 S.W.3d at 647; *see also Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976). The burden is on TDPRS to rebut the presumption that the best interest of the child is served by keeping custody in the natural parents. *In re K.C.M.,* 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). The *Holley* factors are not exhaustive, nor must all of the factors be proved as a condition precedent to parental termination. *See In re C.H.,* 89 S.W.3d at 27. The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination

is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. *Id.*

### 1. Child's Desires

The record fails to reflect the desires of Z.M. because Z.M. is an infant.

### 2. Child's Current and Future Physical and Emotional Needs

Appellant contends that the record shows that she had sufficient financial resources to meet the needs of Z.M. However, appellant failed to provide evidence that she was able to support herself financially. Appellant testified that she was unable to work during her pregnancy with Z.M., but that her mother paid her rent during this time. Appellant testified that she supported herself at the time of trial and had done so for the past three months by cleaning apartments on a part-time basis. Appellant also testified that she had secured an additional job as a cafeteria worker. However, appellant failed to provide proof that she was employed cleaning apartments. Appellant did provide a paycheck stub from her employment at the cafeteria. Appellant testified that if the children returned to her home, she would support them with earnings from her current job and with the help of her family.

### 3. Current and Future Physical Danger to Child

■ Appellant contends that she did not engage in conduct that endangered Z.M. However, appellant admitted that she was a narcotics addict and that she had continued to use narcotics, most recently in November 2003, just months prior to the termination hearing in the trial court. Appellant also admitted that one of her children, M.D.V., was born with marijuana in her system and that she used prescription drugs recreationally during her pregnancy. Appellant admitted that,

prior to having her children taken into protective custody, there was a period in which she smoked marijuana on a daily basis after the children were put to sleep. Appellant testified that she quit using narcotics after M.D.V. was born. However, while attempts were being made to place M.D.V. back into appellant's care, and while Z.M. was approximately four to five months old, appellant relapsed and used narcotics in November 2003. Nonetheless, appellant testified that she did not believe that her use of narcotics endangered the children's emotional and physical well-being. Evidence of pre-natal and post-natal drug abuse by a parent may be a ground for termination. *In the Interest of R.D.*, 955 S.W.2d 364, 368 (Tex.App.-San Antonio 1997, pet. denied).

Appellant also contends that she provided a safe environment for her children and that she had a safety plan in place with friends. However, the record reflects that appellant endangered her children physically on several occasions. Coleman received appellant's case in August 2003 and worked with appellant to bring three of her children back into the home and to keep Z.M. in the home with appellant. Coleman worked to identify appellant's needs, to teach appellant parenting skills and child safety, to teach appellant anger management techniques, and to reunify the family.

Coleman testified that appellant failed to participate actively in the services that she offered to ensure the children's safety by demonstrating a hostile attitude and by missing scheduled appointments. Coleman also stated that appellant endangered the safety of her children. For instance, Coleman observed that appellant's two-year-old, M.D.V., was prone to open doors and to leave the apartment. At one point, M.R.M. escaped from the home and was picked up and taken to a mall security

center by passers-by. Knowing this, Coleman instructed appellant regarding child safety, including teaching appellant how to childproof the home's doors so that the children could not leave the home or enter dangerous areas. However, the record shows that appellant failed to heed Coleman's recommendations because, at a later time, Coleman observed M.D.V. open the apartment door and walk outside after appellant had left the children alone while retrieving a cup from her car.

During another visit, Coleman observed appellant's children unattended in the bathroom. On this occasion, Coleman observed appellant in the dining room talking on the phone, while M.D.V. was left alone in the bathtub filled with water and Z.M. was placed next to the tub in his infant seat. Coleman attempted to educate appellant about the dangers that her conduct posed for her children, but appellant became angry and defensive.

Coleman also testified that, when she came to appellant's apartment on several occasions, she observed different men inside appellant's home. Coleman testified that, on one occasion, one of the men acted in a threatening manner toward her and asked whether she was scared of him. Finally, Coleman testified that, during several scheduled visits, appellant appeared to be high on drugs.

### 4. Parental Abilities

As discussed previously, the record reflects that appellant's parental abilities are questionable. Appellant persisted in engaging in conduct dangerous to her children, including leaving the children unsupervised and failing to childproof the home.

### 5. Programs Available to Assist Person Seeking Custody

Appellant actually completed parenting classes and counseling, but thereafter continued to use marijuana and prescription drugs for recreational purposes and failed to cooperate with her case worker to protect the children by, for example, childproofing her residence.

### 6. Plans for Child by Person Seeking Custody

The only plan that appellant had was to try to support and to take care of Z.M., both by her own efforts and with help from her family.

### 7. Stability of Home

Although appellant maintained a residence for over a year at the same place, she found it necessary to rely on family to help pay the rent.

### 8 & 9. Parent's Acts or Omissions, and Excuses Therefor, that May Indicate Improper Parent–Child Relationship

The evidence relevant to these factors is discussed above, in our analysis of the endangerment issue.

### 10. Summary

Viewing the evidence in the light most favorable to the verdict, we hold that the trial court could have formed a firm belief or conviction that termination of appellant's parental rights was in the best interest of Z.M., particularly because the uncontroverted evidence shows that appellant endangered the physical and emotional well-being of Z.M. by engaging in a course of conduct involving the use of narcotics and the failure to supervise him adequately. *See Robinson v. TDPRS*, 89 S.W.3d 679, 688 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (finding pattern and practice of drug abuse, despite attending programs, to be sufficient evidence to support best-interest finding). We hold that the evidence was legally sufficient and, despite appellant's having presented some evidence of completion of parenting classes

and some evidence of establishing an employment history and stable home environment, factually sufficient to uphold the jury's finding that termination of appellant's parental rights was in the best interest of Z.M.

We overrule appellant's second issue presented for review.

## Conclusion

We affirm the termination order of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

Because the majority errs in holding that the evidence in this case is legally sufficient to support a finding, under Texas Family Code section 161.001(1)(E),[1] that appellant, Michelle Lynn Vasquez, engaged in conduct which endangered the physical or emotional well-being of her son, Z.M., I respectfully dissent.

## The Issue Presented

In her first issue, Vasquez argues that the trial court erred in terminating her parental rights to Z.M. because there is no evidence in the record to support a finding, under section 161.001(1)(E), that she had endangered the physical or emotional well being of Z.M.

In response, the Texas Department of Protective and Regulatory Services ("TDPRS") concedes that the "primary conduct at issue in this case is the evidence of ... Vasquez's illegal drug use." It emphasizes that Vasquez admitted that

M.D.V., another one of her children born prior to Z.M., "had marijuana in her system when she was born" and that Vasquez "began smoking marijuana again within three months of M.D.V.'s birth." TDPRS then argues

> What is *most critical*, however, is that after the Agency had already worked with Ms. Vasquez from November of 2002, including after an intensive family worker provided her one and one services and returned M.D.V. to her care, Ms. Vasquez admitted she relapsed back into illegal drug use in November of 2003, when Z.M. was only about 4 months old.
>
> . . . .
>
> Ms. Vasquez's deliberate and voluntary decision to continue her conduct of illegal drug use was dangerous to Z.M., because it exposed Z.M. to the *possibility* that her supervision would be subject to a parent impaired in judgment by drug use and also *raised the possibility* that the parent could be incarcerated for the crime of using illegal drugs. Ms. Vasquez's drug use endangered her child for purposes of a finding under subsection (E).

(Emphasis added). In fact, the record reveals that Vasquez admitted that she had a week-long relapse, using marijuana,[2] in November 2003.

Thus, the issue squarely presented to this Court, and argued by the parties, is whether Vasquez's week-long relapse of marijuana use in November of 2003 amounted to conduct that endangered Z.M. for purposes of the trial court's find-

---

1. Tex. Fam.Code Ann. § 161.001(1)(E) (Vernon Supp.2005).

2. Although Vasquez did not admit to possessing a specific amount of marijuana in November 2003, a person commits the Class B misdemeanor offense of possession of marijuana if the person knowingly or intentionally possesses a usable quantity of marijuana in the amount of two ounces or less. Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (Vernon 2003).

ing under section 161.001(1)(E). Tex. Fam. Code Ann. § 161.001 (Vernon Supp.2005). As a matter of law, the mere *possibility* that Vasquez's supervision of Z.M. might have been impaired and the mere *possibility* that she could have been incarcerated for her week-long use of marijuana in November of 2003 is not enough to forever terminate her parental rights with respect to Z.M.

## Standard of Review

The United States Supreme Court has long recognized that a parent's right to "the companionship, care, custody, and management" of his or her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). In fact, the Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). Likewise, the Texas Supreme Court has also concluded that "this natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). Consequently, "termination proceedings should be strictly scrutinized, and involuntary termination statutes are strictly construed in favor of the parent." *Id.*

"A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties and powers with respect to each other except for the child's right to inherit." *Id.* Therefore, "the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id.* (citing *Santosky*, 455 U.S. at 747, 102 S.Ct. at 1391; *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984)). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam.Code Ann. § 101.007 (Vernon 2002); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex.2002). Because termination findings must be based upon clear and convincing evidence, not simply a preponderance of the evidence, the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–66. Instead, both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. *Id.* at 265–66. With respect to a legal sufficiency point, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266.

## Endangerment

In proceedings to terminate the parent-child relationship brought under section 161.001, TDPRS must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under subsection (1) of the statute and that termination is in the best interest of the child. Tex. Fam.Code Ann. § 161.001. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). Under section 161.001(1)(E), a court may order termination of the parent-child relationship only if it finds by clear and con-

vincing evidence that a parent has "engaged in conduct ... which *endangers* the physical or emotional well-being of the child." TEX. FAM.CODE ANN. § 161.001(1)(E) (emphasis added).

In support of its argument that "Vasquez's drug use endangered [Z.M.] for purposes of a finding under subsection (E)," TDPRS relies on *In re U.P.*, 105 S.W.3d 222 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *Robinson v. Texas Department of Protective and Regulatory Services,* 89 S.W.3d 679 (Tex.App.-Houston [1st Dist.] 2002, no pet.); and *In re W.A.B.*, 979 S.W.2d 804 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). However, each of these cases is inapplicable to the facts before us.

The court in *U.P.* held that "evidence that a parent provided a controlled substance to the mother while the child was *in utero,* resulting in health problems emanating solely from the presence of that substance in the child's blood during gestation, is clear and convincing evidence of conduct endangering the physical well-being of a child under Family Code section 161.001(1)(E)." 105 S.W.3d at 236. The court also held that evidence establishing that the parent had been arrested and incarcerated for one year for selling narcotics, resulting in the child's not knowing either of her biological parents, was legally and factually sufficient to support the trial court's finding of endangerment to the child's emotional well-being. *Id.*

In *Robinson,* a mother was arrested for the offense of possession of cocaine and placed on community supervision for three years. 89 S.W.3d at 682. The mother signed a family service plan with TDPRS, agreeing to avoid criminal activity and submit to drug tests. *Id.* However, while on community supervision, the mother tested positive for cocaine use, and, at that time, was pregnant. *Id.* The criminal district court revoked the mother's community supervision and she served three months in jail. *Id.* This Court stated that the mother's testimony "to her drug problems ceasing within two months before her trial [did] not controvert evidence that [her] illegal drug activity [had] been ongoing for 20 years." *Id.* at 687. We held that the evidence was factually sufficient to support a finding that the mother endangered her children's emotional well-being and that her use of narcotics during her pregnancy could be considered endangering a child under section 161.001(1)(E). *Id.* at 687 & n. 9.

In *W.A.B.,* the court held that a mother's "criminal history, imprisonment, and illegal drug use *during* and after her pregnancy constitute[d] a basis for termination of her parental rights" under section 161.001(1)(E). 979 S.W.2d at 807 (emphasis added).

In contrast to these cases, there is no evidence in the record before us that Vasquez had ever been arrested for or had used narcotics while pregnant with Z.M. Rather than discuss the cases actually relied upon by TDPRS in support of its argument, the majority, citing *In the Interest of M.D.V.,* No. 14-04-00463-CV, 2005 WL 2787006 (Tex.App.-Houston [14th Dist.] Oct. 27, 2005, no pet. h.) (not designated for publication), reaches the following result:

> Despite there being no direct evidence of appellant's drug use or neglect actually injuring Z.M., TDPRS presented evidence that appellant engaged in a course of conduct that endangered Z.M.'s physical and emotional well-being.

However, although *M.D.V.* concerns Z.M.'s sibling, it is just as inapplicable as *U.P., Robinson,* and *W.A.B.* In rejecting Vasquez's argument that her drug use did not endanger M.D.V., the court in *M.D.V.* emphasized

To the contrary, appellant admitted using marijuana and illegal prescription drugs while she was pregnant with M.D.V. A mother's use of drugs during pregnancy may be conduct which endangers the physical and emotional well-being of the child.... Here, appellant's drug use *did* physically harm M.D.V. because she was born with marijuana in her system. Nonetheless, appellant suggests M.D.V. was not harmed because there is no evidence of any resulting medical condition. However, we reject the suggestion that a baby born with the abnormal condition of marijuana in her system has not been harmed simply because there is no evidence of further medical effects. Regardless, the endangering act need not cause actual injury to the child; it is sufficient that the act jeopardizes or exposes the child to loss or injury.... Here, appellant's drug use while pregnant endangered M.D.V. because she was exposed to the possibility of being born with adverse medical conditions.

*M.D.V.*, 2005 WL 2787006, at *3. Z.M. was born two years after M.D.V., and there is no evidence that Vasquez used marijuana or any other narcotics while she was pregnant with Z.M.

Nevertheless, without reference to any pertinent dates, the majority summarizes the evidence in support of its conclusion as follows:

(1) a continued pattern of drug use without regard for the effects that it had on the children, including one child's having tested positive for drugs at birth and the appearance of appellant's having been "high" while caring for the children, including Z.M., as noted by a case worker during visits to the home;

(2) appellant's failure to remain drug-free while under TDPRS's supervision, knowing that such conduct could place her children, including Z.M., at risk; and

(3) the case worker's observation of incidents indicating appellant's negligent supervision (Z.M.'s being left unattended near a filled bathtub with another child in the tub and M.R.M.'s exiting the home into high-traffic areas), without appellant's showing a willingness to take corrective measures, such as child-proofing the home.

Although this summary is based, in large part, on Vasquez's trial testimony, a review of the specific evidence, in the context of the pertinent dates, reveals that there is no evidence at all to support the trial court's finding that Vasquez engaged in conduct that endangered Z.M.

Z.M. was born on July 9, 2003, and the original petition to terminate Vasquez's parental relationship with this child was filed on January 16, 2004. Prior to this time period, Vasquez agreed to give temporary custody of her three other children to TDPRS. From August 2003 to January 2004, Vasquez worked with a TDPRS caseworker to bring her other three children back into her home. During this time period, the only children living with Vasquez were Z.M. and an older child who was returned to Vasquez in September 2003.

Almost all of the incidents to which the majority refers in its above summary involved Vasquez's other children and occurred prior to Z.M.'s birth. In regard to the majority's specific reference that Vasquez left Z.M. "unattended near a filled bathtub," a TDPRS caseworker actually testified that, when she went to Vasquez's home at an unspecified date, Vasquez was in "the dining area on the phone and ... [another child] was in a tub filled with water and [Z.M.] was right by the tub in an infant carrier, infant seat." The case-

worker made no reference as to the size of the apartment, where the bathroom was in relation to the dining area of the apartment, or how long Z.M. was left "unattended" when Vasquez opened the door for the caseworker.

In regard to her continued pattern of drug use, Vasquez, when asked during her trial testimony taken on April 1 and 2, 2004, if she had "ever used cocaine," stated that she had "[i]n the past ... years ago ... not very often." She also admitted that, "three years ago," she had used Valium. Moreover, Vasquez conceded that, during this time, "three years ago," she used marijuana "like every evening practically." She explained that, after she put her three children to sleep, she would smoke marijuana on her porch. After intervention, Vasquez completed parenting classes and inpatient and outpatient treatment for her drug abuse. She conceded, however, that she had a relapse in November 2003 by using marijuana for approximately one week and, subsequently, tested positive for marijuana use. When pressed as to whether she "still [had] a drug problem," Vasquez explained "Well honestly, ma'am, regardless of what may be said or done, a drug, a drug problem is an addiction. It's something that will never go away." Vasquez denied ever using marijuana in the presence of her children, and there is no evidence in the record to the contrary.

This evidence is legally insufficient to support the trial court's finding that Vasquez "engaged in conduct ... which endangered the physical or emotional well-being" of Z.M. Contrary to TDPRS's argument, "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Boyd*, 727 S.W.2d at 533. Rather, it means to actually "expose to loss or injury; to jeopardize." *Id.* The conduct must pose a *real threat of injury or harm.*

TDPRS's argument that Vasquez's use of marijuana "was dangerous to Z.M., because it exposed Z.M. to the possibility that her supervision would be subject to a parent impaired in judgment by drug use and also raised the possibility that the parent could be incarcerated for the crime of using illegal drugs" necessarily fails. Noting that "mere imprisonment, alone, is not conduct endangering a child," the Fort Worth Court of Appeals recently held that evidence that a parent's "conduct in taking ... methamphetamines that resulted in [the parent's] arrest and imprisonment" was legally insufficient to support a finding that the parent endangered his child's physical or emotional well-being under section 161.001(1)(E). *In the Interest of D.J.J.*, 178 S.W.3d 424, 430 (Tex.App.-Fort Worth 2005, no pet.). The court noted that there was no evidence that the parent's use of narcotics created an environment that endangered the child's physical or emotional well-being. *Id.*

Here, likewise, there is simply no evidence to support the majority's surmise that Vasquez's use of marijuana for one week in November 2003 led to any negligent supervision of Z.M. Moreover, the fact that a parent has failed to childproof her home or, on one single occasion, placed her child "right by a tub in an infant carrier" and left the child to answer a knock at the door is not evidence that the parent actually endangered the child's physical well-being.

The only pertinent evidence in regard to Z.M. about Vasquez's narcotics use is that Vasquez used marijuana for approximately one week in November 2003. There is absolutely no evidence in the record to support an inference that Vasquez used marijuana in the presence of Z.M. or that Z.M. was even in Vasquez's home at any-

time that she used marijuana that week. Thus, there is no evidence that Vasquez's use of marijuana constituted a real threat of injury or harm to Z.M.

Finally, it must be noted that section 161.001(1)(P) provides that a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that a parent has "used a controlled substance ... in a manner that endangered the health and safety" of a child *and* (1) "failed to complete a court-ordered substance abuse treatment program," or (2) "after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance." TEX. FAM.CODE ANN. § 161.001(1)(P) (Vernon Supp.2005) (emphasis added). Subsection (1)(P) clearly provides for circumstances involving the use of controlled substances in a manner that endangers the health and safety of children. The majority's holding allows TDPRS to ignore subsection (1)(P)'s additional requirement that it prove that a parent either failed to complete a court-ordered substance abuse program or continued to abuse a controlled substance after completing such a program. To require *less* proof for circumstances involving the use of controlled substances under subsection (1)(E) renders subsection (1)(P) meaningless.

### Conclusion

TDPRS did not present any evidence of any effect on Z.M. of Vasquez's week-long use of marijuana in November 2003. In fact, it presented no evidence that Z.M. was present, or even in the same home, when Vasquez relapsed. Moreover, there is no evidence that Vasquez's use of marijuana caused her to fail to childproof her home or place Z.M. "right by a tub in an infant carrier" and leave Z.M. to answer a knock at the door, or that this conduct constituted a real threat of injury or harm to Z.M.

The focus of subsection (1)(E) is clearly on conduct that actually endangers the well-being of the child. Here, strict scrutiny of the record, with subsection (1)(E) strictly construed in favor of Vasquez, readily reveals that there is no evidence to support the trial court's finding that Vasquez engaged in conduct which endangered the physical or emotional well-being of Z.M. Accordingly, Vasquez's first issue should be sustained and the judgment should be reversed and rendered in her favor.