COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-064-CV

 

 

IN THE INTEREST OF A.H., 

L.E.S. AND L.K.S., CHILDREN                                                                

 

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Nancy McHorse
appeals the trial court=s order
terminating her parental rights to her children, A.H., L.E.S., and L.K.S.  In two issues, she challenges the legal and
factual sufficiency of the evidence supporting the trial court=s findings that she (1) engaged in conduct or knowingly placed the
children with persons who engaged in conduct that endangered their physical or
emotional well-being and (2) knowingly placed or knowingly allowed the children
to remain in conditions or surroundings which endangered their physical or
emotional well-being.  Because there is
sufficient evidence to support both the conduct and environment findings, we
affirm.

McHorse is the biological mother
of A.H., L.E.S., and L.K.S.  Michael H.[2]
is the alleged biological father of A.H., and Leslie S.[3]
is the alleged biological father of the twins L.E.S. and L.K.S.  Neither alleged father appeared at trial, and
neither is a party to this appeal.  

Child Protective Services
(CPS) first became involved with McHorse in October 2003 amidst allegations
that the condition of her home was not appropriate for her then only child,
A.H.  CPS received a second referral
concerning McHorse and Leslie=s drug use and neglectful supervision of A.H. in early 2004.  Following an investigation, CPS found Areason to believe, risk indicated@ for neglectful supervision. 
Moreover, because McHorse failed to cooperate with CPS by repeatedly
refusing to submit to drug tests, CPS indicated that if another referral came
in, it would consider either court-ordered services or possible removal.








McHorse admitted at trial
that from January to March 2004, she was addicted to methamphetamine, but she
claimed that she quit using once she discovered she was pregnant with L.E.S.
and L.K.S.  She also admitted that she
was using methamphetamine during the first four months of her pregnancy with
the twins, although she claimed that she did not realize she was pregnant at
the time.  A CPS investigator testified
that in June 2004, McHorse admitted to using methamphetamine every two days up until
May 2004.  

Another CPS investigator
testified that in March 2004, McHorse told her that she used methamphetamine
every day, but then cut back to every three or four days once she realized she
was pregnant.  The same CPS investigator
also testified that McHorse told her that she would probably go back to using
methamphetamine after the twins were born and that if she wanted Ato go through life high, that [] was her business.@  The investigator also
testified that McHorse admitted to her that A.H. was aware of McHorse=s drug use.  McHorse denied all
of these prior statements at trial.








In June 2004, when McHorse
was still pregnant with L.E.S. and L.K.S., police raided the apartment she
shared with Leslie and recovered 2.6 grams of methamphetamine and a scale.  A.H. and McHorse=s ten-year-old sister were present in the apartment during the police
raid.  McHorse testified that Leslie was
selling methamphetamine out of the apartment. 
Leslie was arrested the day of the raid, and McHorse was arrested two
weeks later for delivery of methamphetamine. 
The charge against McHorse was later dropped.  At trial, McHorse conceded that the drug use
and activity at her home had endangered A.H. 
A.H. was removed by CPS immediately after the raid.  A.H. was infected with lice when she was
removed.  However, ten days after the
raid, McHorse passed a urinalysis.

In August 2004, while still
in jail, McHorse gave birth to L.E.S. and L.K.S.  L.E.S. and L.K.S. were not born with drugs in
their systems.  After their birth, they
were immediately placed into foster care.

After McHorse was released
from jail in September 2004, she began to work on her service plan and obtained
housing with CPS=s help.  Through various programs, McHorse attended
counseling sessions, outpatient drug rehabilitation, and parenting
classes.  McHorse received completion
certificates from some of the programs, but was dropped from a Positive
Influences[4]
class because she failed to attend. 
During this time, McHorse attended most of her scheduled visits with her
children.

In January and February 2005,
McHorse tested clean for drugs.  In April
2005, L.E.S. and L.K.S. were returned to McHorse on a monitored return
order.  A.H. was returned to McHorse=s care in May 2005 after the school year ended.  McHorse testified that a month after the
children returned, she again started using methamphetamine. 








When the children were
returned to McHorse, she was employed at Sonic. 
McHorse subsequently quit her job at Sonic to attend nurse=s assistant school.  She
graduated in July 2005, but she had difficulty securing employment as a nurse=s assistant thereafter.  At
trial, McHorse admitted that during this period she was parenting while under
the influence of methamphetamine, even though she knew this endangered her
children.

In July 2005, McHorse=s electricity was shut off because of nonpayment.  Furthermore, during an in-home visit, a
court-appointed volunteer advocate for the children noticed that the apartment
was unkempt and observed a lack of bonding between McHorse and the children. 

A CPS family reunification
worker testified that during one of her home visits she had a conversation with
McHorse as to why McHorse should not have given A.H., who was six years old at
the time, Kaopectate and adult Tylenol for constipation and stomachache.  McHorse made these medication mistakes
despite having just graduated from nurse=s assistant school.  In another
visit, McHorse told her that A.H.=s lice problem had become so bad, and A.H. had missed so many days of
school that the school principal and vice-principal had visited her home to
give her lice shampoo and a lice comb. 
During this same visit, the CPS family reunification worker discovered
that L.E.S. and L.K.S. had a diaper rash so severe that she recommended that
McHorse take the twins to the emergency room. 








During the family
reunification worker=s visits she
noticed that McHorse had begun talking really fast and was jittery and
shaking.  She asked McHorse to take a
drug test.  McHorse=s urinalysis tested positive for narcotics, and she admitted that she
was again using methamphetamine.  McHorse
refused to submit to hair follicle tests because she did not want a Apaper trail.@

In September 2005, the
children were again removed from McHorse=s care.  At the time of removal,
A.H had a severe lice problem, was constipated, and had an ear infection.  L.E.S. and L.K.S. also had ear infections.  

During the time L.E.S. and
L.K.S. were in McHorse=s care, they
did not grow and gain weight at a healthy rate. 
After removal, A.H. was placed with relatives where she is doing
well.  L.E.S and L.K.S. have been placed
with the same foster family that now hopes to adopt them.  In a bench trial, the court found clear and
convincing evidence to support termination based on both the conduct and
environment grounds.   








McHorse believes that, based
on her period of sobriety before and during trial, her children should be
returned to her.  Furthermore, she claims
that there was no evidence that her drug use or lifestyle endangered her
children.  McHorse also argues that there
was no evidence that the children suffered from any medical, psychological, or
developmental problems as a result of her drug use.  Her complaint on appeal is that there is no
evidence or insufficient evidence to support the trial court=s order of termination on either the conduct or environment
grounds.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E) (Vernon Supp. 2006).  Either one of these statutory grounds, plus
the trial court=s best
interest finding, which McHorse does not challenge, will support the trial
court=s termination order.  See id.; In re J.F.C., 96
S.W.3d 256, 261 (Tex. 2002); Vasquez v. Tex. Dep=t of Protective & Regulatory Servs., 190 S.W.3d 189, 194 (Tex. App.CHouston [1st Dist.] 2005, pet. denied).   

Stability and permanence are
paramount in the upbringing of children. 
See In re T.D.C., 91 S.W.3d 865, 873 (Tex. App.CFort Worth 2002, pet. denied). 
A factfinder may infer from past conduct endangering the well-being of
the children that similar conduct will recur if the children are returned to
the parent.  See In re D.L.N., 958
S.W.2d 934, 941 (Tex. App.CWaco 1997, pet. denied), disapproved on other grounds by In
re J.F.C., 96 S.W.3d at 256, and In re C.H., 89 S.W.3d 17, 17 (Tex.
2002).  Drug use and its effect on a
parent=s life and her ability to parent may establish an endangering course
of conduct.  Dupree v. Tex. Dep=t of Protective & Regulatory Servs., 907 S.W.2d 81, 84-85 (Tex. App.CDallas 1995, no writ).  








As detailed above, McHorse=s involvement with CPS goes back several years, and she has routinely
made choices that resulted in the endangerment and neglect of her
children.  McHorse=s most recent positive urinalysis is simply the latest in a repeating
series of events, all of which support termination.  The record demonstrates that she has a
history of illegal drug use, including some during her pregnancy with L.E.S.
and L.K.S.  The fact that she chose for
herself, while pregnant, and A.H. to continue living with Leslie even though he
was selling narcotics is evidence of an endangering environment.  See id. (discussing how an endangering
environment can be created by a parent=s involvement with narcotics). 
McHorse admitted to using methamphetamine throughout CPS involvement
with this case.  Even after she completed
some counseling and parenting classes, she admitted that she returned to using
methamphetamine a mere month after her children were returned to her care. 

Furthermore, as discussed
above, the record indicates that McHorse has had great difficulty attending to
the medical and sanitary needs of her children. 
The lack of attention to her children=s various ailments and the twins= lack of growth and development while they were under McHorse=s care is additional evidence supporting termination.  See In re B.T., 154 S.W.3d 200, 214
(Tex. App.CFort Worth
2004, no pet.) (discussing evidence to support removal, such as continually
filthy home conditions and failure to address the children=s health concerns), superseded in part by statute, Tex. Fam. Code Ann. ' 263.405(i) (Vernon Supp. 2006).








Additionally, even though
McHorse chose to check herself into inpatient rehabilitation after this case
was commenced, this alone is not enough to overturn the trial court=s order of termination.  Even if
the trial court believed that McHorse had ceased using narcotics prior to
trial, the court could have believed that her drug use would likely recur and
further jeopardize her children=s well being.  See In re R.W.,
129 S.W.3d 732, 741 (Tex. App.CFort Worth 2004, pet. denied).  

Therefore, based on the appropriate standards of review,[5]
we hold that the evidence is legally and factually sufficient to support the
trial court=s
findings that McHorse engaged in conduct or knowingly placed the children with
persons that endangered their physical or emotional well-being and knowingly
allowed the children to remain in conditions or surroundings which endangered
their physical or emotional well-being.  See
Tex. Fam. Code Ann. '
161.001(1)(D)-(E).  We overrule McHorse=s two
issues and affirm the trial court=s termination order.

 

 

PER CURIAM

 

PANEL F:    MCCOY, GARDNER, and WALKER, JJ.

 

DELIVERED:  September 28, 2006











[1]See Tex. R. App. P. 47.4.





[2]Michael H.=s parental rights were also
terminated in the order of termination.





[3]Leslie S.=s parental rights were likewise
terminated in the order of termination. 





[4]This is the major parenting class
that most parents investigated by CPS attend. 






[5]See In re J.F.C., 96 S.W.3d at 265 (discussing the standard for legal
sufficiency); In re C.H., 89 S.W.3d at 25 (discussing the standard for
factual sufficiency).