Opinion issued November 20, 2007






     















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00267-CV





IN THE INTEREST OF C.S., a child





On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 06CP0024




MEMORANDUM OPINIONAppellant, Amanda Strange, appeals the trial court’s order terminating parental
rights to her child, C.S. In two issues, appellant contends that the evidence is
factually insufficient to support the jury’s finding that termination is in the best
interest of the child and that the court abused its discretion by denying her Motion to
Relax the Docket Control Order and striking her counterpetition. We affirm.
Background
          On March 24, 2006, the Galveston Sheriff’s Office was called to Strange’s
house to conduct a child welfare check. Strange was living with her mother, Linda.
As Officer Dunn got out of his car to approach the house, he could hear the child
screaming inside the house. Officer Dunn looked into the house through a living
room window. He saw Strange unconscious, on the couch, and the screaming child
less than a foot away from her head. There was no answer when Officer Dunn
knocked at the door. With the assistance of another officer who arrived at the house,
Officer Dunn kicked in the door. The officers awakened Strange. The officers asked
when the child had eaten last. Strange responded that the child had eaten just thirty
minutes before they arrived. Although Strange claimed the child was not hungry, the
child drank the entire bottle of milk that Strange made for her in the officers’
presence. As Strange was speaking with the officers, the officers noted that she
appeared to be under the influence of “some type of drug.” The officers asked
Strange if she had taken any medication, but she denied having taken medication. 
The officers also found an empty bottle of Vicodin. The prescription, which was in
Linda’s name, was for 90 pills but had been filled 18 days before. When Officer
Dunn asked where Linda was, Strange responded that she had not seen her in days
and that only she and her sister, Sylvia, lived in the house.
          Linda, Sylvia, and Strange’s other sister, Jessica, arrived at the house. Sylvia
told Officer Dunn that she had called the Sheriff’s Department because Strange had
talked about committing suicide. Sylvia also said Strange stated that she did not want
the child. Jessica told the officers the same details as Sylvia. Linda told the officers
that she did not know about Strange’s thoughts of suicide, but that all three of her
daughters, including Strange, had a drug problem. Officer Dunn asked Strange if
anyone could come and care for the child. Strange said there was no one who could
take care of the baby.
          Officer Dunn contacted the Department of Family & Protective Services
(DFPS) and an ambulance to evaluate Strange and the child. The emergency medical
technicians stated that they believed that Strange had taken some sort of medication
but that the child was fine. Around the same time, the DFPS caseworker, Angela
Woodford, arrived at the home to take custody of the child. Woodford stated that
DFPS had to remove the child from the home until an investigation could be
completed but that Strange could release the child to the custody of a friend or
relative, as long as that person could pass a criminal background check. However,
Strange was unable to give Woodford the name of any friend or relative who could
pass a criminal background check. Woodford then arranged for the child to go to a
foster family pending the investigation.
          On March 27, 2006, DFPS petitioned the Galveston County District Court for
emergency temporary custody. The trial court granted DFPS temporary sole
managing conservatorship of the child and ordered the case to mediation. On April
5, 2006, the trial court issued a docket control order, which set a February 3, 2007
deadline for all pretrial amendments and a February 26, 2007 deadline for all jury
questions and instructions. The order also set a pretrial hearing for March 2, 2007
and trial for March 5, 2007.
          The mediation took place on April 5, 2006, and the DFPS caseworker stated
that the goal of the mediation was family reunification. During mediation, Strange
and DFPS created a Family Service Plan, which Strange had to complete before she
could regain custody of the child. Strange agreed to submit to a psychological
evaluation and parenting assessment, a drug and alcohol assessment, random drug
testing, and to complete supervised visits with the child. Strange also agreed to
cooperate with DFPS and to maintain a stable home environment and employment.
At mediation, the parties decided that, upon completion of a home study, the child
would be placed with Linda, the child’s maternal grandmother.
          After mediation, DFPS sought to perform a home study on Linda. Woodford
went to the home to perform the scheduled preliminary walk-through of the home, but
no one answered the door when she knocked, and no one answered at the phone
number she had. Woodford returned to the office, and her supervisor located a
different phone number for Linda. Linda answered at the new phone number but
seemed to be asleep and was unaware that the time of the appointment had passed. 
DFPS completed the preliminary walk-through the following week. In the weeks
after the home study was completed, however, DFPS received a voice mail message
from Linda, in which she stated that she did not want to care for the child. On April
18, 2006, Linda also met with the new DFPS caseworker, Kathy Fee, and told her that
she was not sure she wanted to care for the child for 18 years. Linda then stated that
she did want the child, but later again repeated that she did not want to care for the
child. Fee responded that the child needed consistency and Fee decided to leave the
child in temporary foster care, where she had been since she was removed from
Strange’s custody, but she proceeded to seek reunification with Strange.
          In the months after mediation, Strange failed to comply with the requirements
of the service plan. In May 2006, Strange’s drug test was positive for marijuana. 
Strange was also released from an outpatient drug rehabilitation facility for excessive
absenteeism. Strange told Fee in June 2006 that she was addicted to prescription
drugs. Strange stated that she was unemployed and had no way of seeking
employment. She and the child lived with Strange’s mother and depended on friends
for financial support. During Strange’s July visit with the child at the child’s foster
home, the child’s foster mother noted that Strange was not attentive and seemed tired
and depressed. Strange admitted to being under the influence of drugs during this
visit. Strange failed to visit the child in August and did not contact DFPS to schedule
a September visit. Strange failed a drug test in September 2006.
          At the September permanency hearing, DFPS stated that it was changing its
goal from reunification to termination and adoption by a non-relative. At trial, DFPS
presented testimony from the two DFPS caseworkers and the child’s foster mother,
who each testified that termination was in the child’s best interest. Strange testified
that she had struggled with drug addiction since she was 17 and that her sisters had
abused drugs as well. Linda testified that she thought Strange would never get her
child back. When asked if Strange’s rights should be terminated because she is a
habitual drug user and had a criminal history, Linda responded, “Why not?”
Best Interest of the Child
A. Standard of Review
           In her first issue, Strange asserts that the evidence is factually insufficient to
show that it is in the best interest of the child for the parent-child relationship to be
terminated. In termination-of-parental-rights cases, due process requires that the
plaintiff support his claims of termination by clear and convincing evidence. Vasquez
v. Tex. Dep’t of Protective & Regulatory Servs., 190 S.W.3d 189, 193 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied) (citing Santosky v. Kramer, 455 U.S.
745, 747–48, 102 S. Ct. 1388, 1391–92 (1982); In re B.L.D. & B.R.D., 113 S.W.3d
340, 353–54 (Tex. 2003)). “Clear and convincing evidence” is defined as that
measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the claims sought to be proved. Tex. Fam.
Code Ann. § 101.007 (Vernon 2002). When an appellant attacks the factual
sufficiency of an adverse finding on an issue on which the opposing party had the
burden of proof, that appellant must demonstrate that there is insufficient evidence
to support the finding. Vasquez, 190 S.W.3d at 193; see also Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983). In analyzing factual sufficiency, we consider
whether the disputed evidence is such that a reasonable fact finder could not have
resolved that disputed evidence in favor of its finding. Vasquez, 190 S.W.3d at 193; 
see also In re J.F.C., A.B.C., & M.B.C., 96 S.W.3d. 256, 265–66 (Tex. 2002). A
factual sufficiency challenge will be overruled if, considering all the evidence in the
record that both supports and contradicts the trial court’s finding, the fact finder
reasonably could form a firm conviction or belief that the termination of parental
rights is in the best interest of the child. In re C.H., 89 S.W.3d 17, 28–29 (Tex.
2002); Vasquez, 190 S.W.3d at 193–94. 
          In determining whether termination is in the child’s best interest, we apply the
following factors laid out in Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976).
Those factors include, but are not limited to: 
          1.       The child’s desires;
 
          2.       The child’s physical and emotional needs, now and in the future;
 
          3.       The emotional and physical danger to the child, now and in the future;
 
          4.       The parental ability of the individuals seeking custody;
 
          5.       The programs available to assist these individuals in promoting the
child’s best interest;
 
          6.       The plans for the child by the individual or agency seeking custody;
 
          7.       The stability of the home or proposed placement;
 
          8.       The parent’s act or omissions that may indicate the existing parent-child
relationship is not the proper one; and
 
          9.       Any excuse for the parent’s acts or omissions.

Holley, 544 S.W.2d at 371–72. The party in favor of termination is not required to
prove all of the Holley factors, particularly where there is undisputed evidence that
the parent-child relationship endangers the child’s safety. See In re C.H., 89 S.W.3d
at 27. Additionally, absence of evidence about some of the Holley factors does not
preclude a fact finder from reasonably forming a strong conviction that termination
is in the child’s best interest. In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston
[1st Dist] 2003, no pet.).
1. Desires of the child
          C.S. is now approximately two years old and has been in foster care since she
was eight months old. Because she is too young to express her desires, this factor
does not demonstrate whether termination of Strange’s parental rights is in the best
interest of the child.
2. Emotional and physical needs of the child now and in the future
          Strange contends that no evidence shows that she did not provide appropriate
medical care, food, clothing, or shelter, and that there is no evidence of neglect. 
Contrary to this claim, the record shows that police officers found the hungry infant
child next to an unconscious Strange. Strange also asserts that she and her mother
Linda are bonded to the child. However, the record shows that Strange missed
opportunities to visit her child and, at least once, visited the child after ingesting
narcotics. Strange testified that she struggled with drug addiction and was relying on
a friend for financial support. She also testified that she was unemployed with no way
of seeking employment. This factor demonstrates that termination of Strange’s
parental rights is in the best interest of the child.
3. Emotional and physical danger to the child now and in the future 
          As Strange accurately points out, no evidence in the record shows physical
abuse of the child. However, Sylvia told police that Strange had threatened to kill
herself. The record shows Strange continues to abuse and is addicted to narcotics. 
Strange has failed to receive treatment that has been offered to her for her drug
addiction. Also, Strange did not show an interest in the child. Strange failed to
appear for a visit and attended a visit after ingesting narcotics. This factor
demonstrates that termination of Strange’s parental rights is in the best interest of the
child.
4. Parental abilities of the individual seeking custody
          Strange contends that she provided the child with a safe and stable home;
offered Linda as an “appropriate placement”; “attempted to do all that CPS has asked
her to do”; and “loves her child.” The record, however, does not support these
claims. Linda missed her initial appointment for a home study and vacillated whether
she wished to provide long-term care for the child. Police officers found the baby,
hungry, next to an unconscious Strange. Strange failed to comply with the
requirements of the service plan, continued to use drugs, used drugs before a visit
with the child, and missed opportunities to meet with the child. This factor
demonstrates that termination of Strange’s parental rights is in the best interest of the
child.
5. Programs available to assist Strange to promote the best interest of the child
          Strange has had several opportunities to get help with her drug abuse, but has
failed to do so. She was dismissed from an outpatient program for excessive
absenteeism. She acknowledged an addiction to drugs, and asked Fee for information
on a treatment center. Fee put Strange in contact with several residential treatment
centers with available space, but Strange failed to follow-up with any of them. Thus,
although there are programs that have been made available to help Strange overcome
her addiction, Strange has failed to accept help from those programs. This factor
demonstrates that termination of Strange’s parental rights is in the best interest of the
child.
6. Plans for the child by person seeking custody
          The DFPS caseworkers testified that DFPS was seeking to be named sole
managing conservator so that C.S. could be adopted. The child’s foster family
indicated that they had plans to adopt if possible and that the child would be a part
of whatever their family did. Strange wants the child to be placed with her mother,
Linda. However, Linda was equivocal and seemed reluctant to take on the
responsibility of caring for the child for the next 18 years. This factor demonstrates
that termination of Strange’s parental rights is in the best interest of the child. 
7. Stability of the home or proposed placement
          If Strange’s rights were terminated, DFPS intends to pursue adoption. The
child’s foster mother testified that she had been approved by DFPS over a period of
16 months and that she previously had two other foster children placed in her home.
Nothing in the record suggests that the proposed foster/adoption placement would 
be unstable. This factor demonstrates that termination of Strange’s parental rights is
in the best interest of the child.
8. Acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper 
          Strange contends she has demonstrated she is capable of parenting her child
and can keep a stable and safe home. The same circumstances described in number
three demonstrate that the existing parent-child relationship is not a proper one and
that termination of Strange’s parental rights is in the best interest of the child.
9. Any excuse for the acts or omissions of the parent
          Strange gave no reason for her failure to attend or schedule visitation with the
child, or for her absenteeism from her drug rehabilitation program. She has not
demonstrated any ability to maintain a stable environment for the child. This factor
demonstrates that termination of Strange’s parental rights is in the best interest of the
child.
10. Conclusion
          An analysis of the Holley factors shows that a fact finder reasonably could form
a firm conviction or belief that termination is in the best interest of the child. We
conclude that the evidence is sufficient to support the jury’s finding that termination
was in the best interest of the child. We overrule Strange’s first issue.
Motion to Relax Docket Control Order & Counterpetition
          In her second issue, Strange contends that the trial court abused its discretion
by denying her Motion to Relax the Docket Control Order and striking her
counterpetition. Strange filed a Motion to Relax the Docket Control Order and
Motion for Amended Respondent’s Pleadings. In this motion, she asked the court to
allow her to file a counterpetition in the Suit Affecting the Parent-Child Relationship
to request that Linda be named sole managing conservator of the child. A trial court
abuses its discretion when its actions are arbitrary or unreasonable. In re Nitla S.A.
de C.V., 92 S.W.3d 419, 422 (Tex. 2002) (citing Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241–42 (Tex. 1985)). 
          Strange asserts that the trial court abused its discretion in denying her Motion
to Relax the Docket Control Order. A trial court has broad discretion in controlling
its docket. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001). The
trial court filed a control order on April 6, 2006, setting a February 3, 2007 deadline
for the filing of all pleading amendments and pretrial matters. Strange filed the
counterpetition on February 22, 2007, after receiving DFPS’s proposed jury charge,
which made no mention of Linda as a possible conservator. Strange claims that this
was the first time she realized that Linda was no longer being considered as a possible
placement. However, the record shows that on September 12, 2006, DFPS filed a 
permanency plan and progress report, in which DFPS stated that its permanency goal
was “unrelated family adoption.” Therefore, Strange had roughly five months to file
her counterpetition from the time that she learned that DFPS was seeking unrelated
adoption. Strange gives no other reason for her failure to file the counterpetition
before the docket control order’s deadline. The trial court was not unreasonable in
enforcing its docket control order under these circumstances, which show that Strange
should have been aware of DFPS’s intentions for nearly five months. Id. We hold
that the trial court did not abuse its discretion by denying Strange’s Motion to Relax
the Docket Control Order. 
          Strange also asserts that the court abused its discretion in striking her
counterpetition, which Strange filed with her Motion to Relax the Docket Control
Order. In her counterpetition, Strange sought to have her mother, Linda, named sole
managing conservator of the child after Strange received DFPS’s proposed jury
charge, which made no mention of Linda. On appeal, Strange contends that, under
Rule 66 of the Rules of Civil Procedure, she had a right to amend her petition “subject
only to [DFPS’s] right to show surprise.”


 The right of amendment under Rule 63
is subject to the opposing party’s right to show surprise, as determined in the exercise
of the trial court’s discretion. Hardin v. Hardin, 597 S.W.2d 347, 349 (Tex. 1980). 
This showing may be based on the trial court’s conclusion that the amendment on its
face is calculated to surprise or that the amendment would reshape the cause of
action, prejudicing the opposing party and unnecessarily delaying the trial. Id.; see
also Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990). 
Therefore, in reviewing the trial court’s ruling, the fact that the objection was not
expressly based on the grounds of surprise is not controlling. Hardin, 597 S.W.2d
at 349. When the trial court refuses amendments that introduce new substantive
matter under Rule 63, the burden falls on the complaining party to show an abuse of
discretion, rather than on the opposing party to show surprise. Id. On appeal, the
complaining party must clearly show an abuse of discretion in order to disturb a trial
court’s ruling. Id.
          Strange’s new petition sought to change who the court would appoint as
managing conservator. The trial court could have reasonably concluded that the
amendment, filed less than 10 days before trial and more than three weeks after all
amendment were to be filed under the docket control order, would “reshape the cause
of action” and prejudice DFPS. See Hardin, 597 S.W.2d at 344. Although the
original petition does include language suggesting that DFPS would first pursue
conservatorship by a relative, DFPS had made clear to the court and to Strange that
their goal was “unrelated family adoption” in September 2006 when it filed a
permanency progress report. Strange points to no other evidence that suggests that
the court abused its discretion. We hold that the trial court did not abuse its
discretion in striking Strange’s counterpetition.
          We overrule Strange’s second issue.Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Elsa Alcala
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.