COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-064-CV

IN THE INTEREST OF A.H., 

L.E.S. AND L.K.S., CHILDREN 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Nancy McHorse appeals the trial court’s order terminating her parental rights to her children, A.H., L.E.S., and L.K.S.  In two issues, she challenges the legal and factual sufficiency of the evidence supporting the trial court’s findings that she (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being and (2) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being.  Because there is sufficient evidence to support both the conduct and environment findings, we affirm.

McHorse is the biological mother of A.H., L.E.S., and L.K.S.  Michael H.
(footnote: 2) is the alleged biological father of A.H., and Leslie S.
(footnote: 3) is the alleged biological father of the twins L.E.S. and L.K.S.  Neither alleged father appeared at trial, and neither is a party to this appeal.  

Child Protective Services (CPS) first became involved with McHorse in October 2003 amidst allegations that the condition of her home was not appropriate for her then only child, A.H.  CPS received a second referral concerning McHorse and Leslie’s drug use and neglectful supervision of A.H. in early 2004.  Following an investigation, CPS found “reason to believe, risk indicated” for neglectful supervision.  Moreover, because McHorse failed to cooperate with CPS by repeatedly refusing to submit to drug tests, CPS indicated that if another referral came in, it would consider either court-ordered services or possible removal.

McHorse admitted at trial that from January to March 2004, she was addicted to methamphetamine, but she claimed that she quit using once she discovered she was pregnant with L.E.S. and L.K.S.  She also admitted that she was using methamphetamine during the first four months of her pregnancy with the twins, although she claimed that she did not realize she was pregnant at the time.  A CPS investigator testified that in June 2004, McHorse admitted to using methamphetamine every two days up until May 2004.  

Another CPS investigator testified that in March 2004, McHorse told her that she used methamphetamine every day, but then cut back to every three or four days once she realized she was pregnant.  The same CPS investigator also testified that McHorse told her that she would probably go back to using methamphetamine after the twins were born and that if she wanted “to go through life high, that [] was her business.”  The investigator also testified that McHorse admitted to her that A.H. was aware of McHorse’s drug use.  McHorse denied all of these prior statements at trial.

In June 2004, when McHorse was still pregnant with L.E.S. and L.K.S., police raided the apartment she shared with Leslie and recovered 2.6 grams of methamphetamine and a scale.  A.H. and McHorse’s ten-year-old sister were present in the apartment during the police raid.  McHorse testified that Leslie was selling methamphetamine out of the apartment.  Leslie was arrested the day of the raid, and McHorse was arrested two weeks later for delivery of methamphetamine.  The charge against McHorse was later dropped.  At trial, McHorse conceded that the drug use and activity at her home had endangered A.H.  A.H. was removed by CPS immediately after the raid.  A.H. was infected with lice when she was removed.  However, ten days after the raid, McHorse passed a urinalysis.

In August 2004, while still in jail, McHorse gave birth to L.E.S. and L.K.S.  L.E.S. and L.K.S. were not born with drugs in their systems.  After their birth, they were immediately placed into foster care.

After McHorse was released from jail in September 2004, she began to work on her service plan and obtained housing with CPS’s help.  Through various programs, McHorse attended counseling sessions, outpatient drug rehabilitation, and parenting classes.  McHorse received completion certificates from some of the programs, but was dropped from a Positive Influences
(footnote: 4) class because she failed to attend.  During this time, McHorse attended most of her scheduled visits with her children.

In January and February 2005, McHorse tested clean for drugs.  In April 2005, L.E.S. and L.K.S. were returned to McHorse on a monitored return order.  A.H. was returned to McHorse’s care in May 2005 after the school year ended.  McHorse testified that a month after the children returned, she again started using methamphetamine. 

When the children were returned to McHorse, she was employed at Sonic.  McHorse subsequently quit her job at Sonic to attend nurse’s assistant school.  She graduated in July 2005, but she had difficulty securing employment as a nurse’s assistant thereafter.  At trial, McHorse admitted that during this period she was parenting while under the influence of methamphetamine, even though she knew this endangered her children.

In July 2005, McHorse’s electricity was shut off because of nonpayment.  Furthermore, during an in-home visit, a court-appointed volunteer advocate for the children noticed that the apartment was unkempt and observed a lack of bonding between McHorse and the children. 

A CPS family reunification worker testified that during one of her home visits she had a conversation with McHorse as to why McHorse should not have given A.H., who was six years old at the time, Kaopectate and adult Tylenol for constipation and stomachache.  McHorse made these medication mistakes despite having just graduated from nurse’s assistant school.  In another visit, McHorse told her that A.H.’s lice problem had become so bad, and A.H. had missed so many days of school that the school principal and vice-principal had visited her home to give her lice shampoo and a lice comb.  During this same visit, the CPS family reunification worker discovered that L.E.S. and L.K.S. had a diaper rash so severe that she recommended that McHorse take the twins to the emergency room. 

During the family reunification worker’s visits she noticed that McHorse had begun talking really fast and was jittery and shaking.  She asked McHorse to take a drug test.  McHorse’s urinalysis tested positive for narcotics, and she admitted that she was again using methamphetamine.  McHorse refused to submit to hair follicle tests because she did not want a “paper trail.”

In September 2005, the children were again removed from McHorse’s care.  At the time of removal, A.H had a severe lice problem, was constipated, and had an ear infection.  L.E.S. and L.K.S. also had ear infections.  

During the time L.E.S. and L.K.S. were in McHorse’s care, they did not grow and gain weight at a healthy rate.  After removal, A.H. was placed with relatives where she is doing well.  L.E.S and L.K.S. have been placed with the same foster family that now hopes to adopt them.  In a bench trial, the court found clear and convincing evidence to support termination based on both the conduct and environment grounds.   

McHorse believes that, based on her period of sobriety before and during trial, her children should be returned to her.  Furthermore, she claims that there was no evidence that her drug use or lifestyle endangered her children.  McHorse also argues that there was no evidence that the children suffered from any medical, psychological, or developmental problems as a result of her drug use.
  Her complaint on appeal is that there is no evidence or insufficient evidence to support the trial court’s order of termination on either the conduct or environment grounds.  
See 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E) (Vernon Supp. 2006).  Either one of these statutory grounds, plus the trial court’s best interest finding, which McHorse does not challenge, will support the trial court’s termination order.  
See
 
id
.
; 
In re J.F.C.
, 96 S.W.3d 256, 261 (Tex. 2002);
 Vasquez v. Tex. Dep’t of Protective & Regulatory Servs.
, 190 S.W.3d 189, 194 (Tex. App.—Houston [1st
 Dist.] 2005, pet. denied)
. 
  

Stability and permanence are paramount in the upbringing of children.  
See In re T.D.C.
, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied).  A factfinder may infer from past conduct endangering the well-being of the children that similar conduct will recur if the children are returned to the parent.  
See In re D.L.N.
, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), 
disapproved on other grounds by
 
In re J.F.C.
, 96 S.W.3d at 256, and 
In re C.H.
, 89 S.W.3d 17, 17 (Tex. 2002).  Drug use and its effect on a parent’s life and her ability to parent may establish an endangering course of conduct.  
Dupree v. Tex. Dep’t of Protective & Regulatory Servs.
, 907 S.W.2d 81, 84-85 (Tex. App.—Dallas 1995, no writ).  

As detailed above, McHorse’s involvement with CPS goes back several years, and she has routinely made choices that resulted in the endangerment and neglect of her children.  McHorse’s most recent positive urinalysis is simply the latest in a repeating series of events, all of which support termination.  The record demonstrates that she has a history of illegal drug use, including some during her pregnancy with L.E.S. and L.K.S.  The fact that she chose for herself, while pregnant, and A.H. to continue living with Leslie even though he was selling narcotics is evidence of an endangering environment.  
See id. 
(discussing how an endangering environment can be created by a parent’s involvement with narcotics).  McHorse admitted to using methamphetamine throughout CPS involvement with this case.  Even after she completed some counseling and parenting classes, she admitted that she returned to using methamphetamine a mere month after her children were returned to her care. 

Furthermore, as discussed above, the record indicates that McHorse has had great difficulty attending to the medical and sanitary needs of her children.  The lack of attention to her children’s various ailments and the twins’ lack of growth and development while they were under McHorse’s care is additional evidence supporting termination.  
See In re B.T.
, 154 S.W.3d 200, 214 (Tex. App.—Fort Worth 2004, no pet.) (discussing 
evidence to support removal, such as continually filthy home conditions and failure to address the children’s health concerns), 
superseded in part by statute
, 
Tex. Fam. Code Ann.
 § 263.405(i) (Vernon Supp. 2006).

Additionally, even though McHorse chose to check herself into inpatient rehabilitation after this case was commenced, this alone is not enough to overturn the trial court’s order of termination.  Even if the trial court believed that McHorse had ceased using narcotics prior to trial, the court could have believed that her drug use would likely recur and further jeopardize her children’s well being.  
See In re R.W.
, 129 S.W.3d 732, 741 (Tex. App.—Fort Worth 2004, pet. denied).  

Therefore, based on the appropriate standards of review,
(footnote: 5) we hold that the evidence is legally and factually sufficient to support the trial court’s findings that McHorse engaged in conduct or knowingly placed the children with persons that endangered their physical or emotional well-being and knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being.  
See 
Tex. Fam. Code Ann.
 § 161.001(1)(D)-(E).  We overrule McHorse’s two issues and affirm the trial court’s termination order.

PER CURIAM

PANEL F: MCCOY, GARDNER, and WALKER, JJ.

DELIVERED:  September 28, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.

2:
Michael H.’s parental rights were also terminated in the order of termination.

3:
Leslie S.’s parental rights were likewise terminated in the order of termination. 

4:
This is the major parenting class that most parents investigated by CPS attend.  

5:
See In re J.F.C.
,
 96 S.W.3d at 265
 
(discussing the standard for legal sufficiency);
 In re C.H.
, 89 S.W.3d at 25 (discussing the standard for factual sufficiency).