Opinion issued March 15, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00791-CV

———————————

In the Interest of E.C.R. 



 



 

On Appeal from the 314th District
Court 

Harris County, Texas



Trial Court Case No. 201004599J

 



 

O P I N I O N

          In this accelerated appeal, appellant M.R.
challenges the trial court’s decree terminating M.R.’s parental rights to her
minor child, E.C.R.  In two issues, M.R.
argues that the evidence was legally and factually insufficient to support the
termination of her rights under Texas Family Code section 161.001(1)(O) and legally and factually
insufficient to support the finding that the termination of M.R.’s rights was
in the best interest of the child under Texas Family Code section 161.001(2).  Tex.
Fam. Code Ann. § 161.001 (West 2011). 
We reverse and
render in part and affirm in part.

Background

The
Department of Family and Protective Services removed E.C.R. from the care of
his mother, M.R., on or around June 25, 2010. 
On July 8, 2010, the trial court signed temporary orders giving DFPS temporary
managing conservatorship of E.C.R.  Over
one year later, after a bench trial conducted on August 18, 2011, the trial
court terminated M.R.’s parental rights. 
Although DFPS had urged the trial court to find that termination was
appropriate under three subsections of Family Code section 161.001, the trial
court found that termination was warranted only under section 161.001(1)(O).

The evidence at trial demonstrated
that E.C.R. was taken into DFPS’s custody “due to risk of [E.C.R.] being
physically abused by the mother[.]”  The
caseworker, Ehiomen Etinfoh, explained that law enforcement had been called to
an incident in which M.R. was allegedly abusing her four-year-old daughter, Y.C.
 According to an investigator, a witness
reported seeing M.R. drag Y.C. by her ponytail down the street at Interstate 45
and Greens Road.  When the police arrived
they observed Y.C. had a bruised lip, a cut on her forehead, dried blood on her
nose and fresh bruising on her right ear and left eye.  Etinfoh further explained that, while E.C.R.
was not present during that incident, the incident resulted in M.R.’s being
arrested and charged with injury to a child, Y.C.  Etinfoh also explained that M.R. pleaded
guilty and received four years’ deferred adjudication community
supervision.  

In addition to her testimony
regarding the incident that resulted in M.R.’s guilty plea, Etinfoh testified that,
while M.R. had completed some services, she had not completed the “big”
services required by the court’s service plan, i.e., the psychiatric evaluation
and psychological treatment.  She testified
that M.R. had not found employment and that M.R. had lost custody of another
son, A.J.  Etinfoh testified that E.C.R. was
“very behind in his immunizations” and that E.C.R. “had to be caught up, up
until he turned one years old on his shots” because M.R. “was not taking care
of his medical needs.”  When asked about
E.C.R.’s home environment, Etinfoh admitted that she was not personally aware
of E.C.R.’s home environment, but also said that M.R. admitted to Etinfoh in
the year before the trial that M.R. was “moving from house to house.”  Etinfoh did not offer evidence of where M.R.
was living or when or how frequently she moved. 
Etinfoh testified that M.R. attempted to kill herself while she was in
prison on the injury to a child charge and that M.R. had given birth to another
child, younger than E.C.R., who currently lived in the same foster home as
E.C.R.  In short, Etinfoh testified that
she believed termination was in the best interest of E.C.R. because M.R. could
not provide him with a proper, stable environment, her mental status was
questionable, she had not completed the psychiatric evaluation, and she was unemployed.  On cross-examination, Etinfoh confirmed that
E.C.R. came into DFPS’s care “based on risk” due to the allegation of injury to
his sibling.

Lucinda Thomas, the child advocate,
confirmed her belief that M.R. should be removed “based upon alleged physical
risk.”  She testified that M.R. had
failed to complete the required psychiatric and psychotherapy treatments and
that M.R. had not lived in a home or had a job for six months.  According to Thomas, M.R. claimed she was
unable to find a job due to complications with her last pregnancy but M.R. had
not given Thomas any documentation of her inability to work.  Thomas testified that as of the date of the
hearing she recommended termination of M.R.’s parental rights based on alleged
physical risk to E.C.R. and the fact that M.R. had not completed her
services.  

M.R. also testified at the
termination hearing.  M.R. confirmed that
she was E.C.R.’s mother.  M.R. admitted that
she had lost custody of another child in a different child protection case and
that she received deferred adjudication for the injury to a child charge resulting
from the incident involving Y.C.  M.R. also
testified that E.C.R. was living in a safe environment in June 2010 when he was
removed from her care and she never told the caseworker otherwise.  

At the conclusion of the bench
trial, the trial court announced its ruling that M.R.’s parental rights were terminated
based on section 161.001(1)(O) but not on other grounds urged by DFPS.  On September 6, 2011, the trial court entered
a decree terminating M.R.’s parental rights. 
The court found that termination was in the best interest of E.C.R. and
that there was clear and convincing evidence to terminate M.R.’s parental
rights under section 161.001(1)(O).  The
court named DFPS as E.C.R.’s sole managing conservator, finding that that it
was not in E.C.R.’s best interest for the court to appoint a parent, relative,
or other person.

Termination of Parental Rights 

In order to terminate parental rights
under section 161.001 of the Family Code, the petitioner must establish that
the parent engaged in conduct enumerated in one or more of the subsections of
section 161.001(1) and must also show that termination of the parent-child
relationship is in the best interest of the child.  Tex.
Fam. Code Ann. § 161.001 (West Supp. 2011); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984).  The petitioner must prove both prongs and may
not rely solely on a determination that termination is in the best interest of
the child.  Tex. Fam. Code Ann. § 161.001; Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).

It is well-established that parental
rights are of constitutional dimension and are “far more precious than property
rights.”  Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985) (quoting Stanley v. Illinois, 405 U.S. 645, 651,
92 S. Ct. 1208, 1212. Because of the great importance of parental rights,
grounds for termination must be supported by clear and convincing evidence
rather than a mere preponderance.  Tex. Fam. Code Ann. § 161.001; In re C.H., 89 S.W.3d 17, 23 (Tex.
2002).  Clear and convincing evidence
refers to a degree of proof that will produce in the mind of the factfinder a
firm belief or conviction as to the truth of the allegations sought to be
proved.  In re C.H., 89 S.W.3d at 25.

A.   Standard of Review 

When reviewing the legal sufficiency
of the evidence in a case involving termination of parental rights, we
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that there existed grounds for termination under section
161.001(1) and that termination was in the best interest of the child.  See Tex. Fam. Code Ann. § 161.001(1), (2);
In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002).  In doing so, we examine all
evidence in the light most favorable to the finding, assuming that the
“factfinder resolved disputed facts in favor of its finding if a reasonable
factfinder could do so.”  In re J.F.C., 96 S.W.3d at 266.  We must also disregard all evidence that the
factfinder could have reasonably disbelieved or found to be incredible.  Id.  However, we must be careful not to disregard
all of the evidence that does not support the finding, as doing so could “skew
the analysis of whether there is clear and convincing evidence.”  Id.

When conducting a factual sufficiency
review of the evidence in a termination of parental rights case, we examine the
entire record to determine whether “the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction”
that the two prongs of section 161.001 were met.  In re
J.F.C., 96 S.W.3d at 266; see Tex. Fam. Code Ann. § 161.001.  If the evidence that could not be credited in
favor of the finding is so great that it would prevent a reasonable factfinder
from forming a firm belief or conviction that either termination was not in the
best interest of the child, or none of the grounds under section 161.001(1)
were proven, the evidence will be factually insufficient and the termination
will be reversed.  See Tex. Fam. Code Ann.
§ 161.001; In re J.F.C., 96 S.W.3d at
266.

B.  
Texas
Family Code section 161.001(1)(O)—Failure to comply with a court order

 

In her
first point on appeal, M.R. contends that the evidence is legally and factually
insufficient to support termination of her parental rights under section
161.001(1)(O).  For a court to terminate
parental rights under section 161.001(1)(O), the court must find by clear and
convincing evidence that the parent:

[F]ailed to comply with the provisions of a court
order that specifically established the actions necessary for a parent to
obtain the return of the child who has been in the permanent or temporary
managing conservatorship of the [DFPS] for not less than nine months as a
result of the child’s removal from the parent under Chapter 262 for the abuse
or neglect of the child.

 

Tex. Fam. Code § 161.001(1)(O).

 

M.R. does not dispute that DFPS had temporary managing conservatorship of
E.C.R. for more than nine months or that she failed to complete the actions
necessary to obtain the return of E.C.R. as set forth in the trial court’s temporary
orders.  Rather, M.R.’s sole argument on
appeal is that DFPS did not establish by clear and convincing evidence that
E.C.R. was removed from M.R.’s care as a
result of M.R.’s abuse or neglect of E.C.R.  

For a trial court to terminate parental rights under section
161.001(1)(O), it must find that the child who is the subject of the suit was
removed as a result of the abuse or neglect of that specific child.  See Mann v.
Dep’t of Family and Protective Servs., No. 01–08–01004–CV.2009 WL 2961396, at *6 (Tex. App.—Houston [1st
Dist.] Sept. 17, 2009, no pet.) (mem. op.) (section 161.001(1)(O) requires that
trial court find by clear and convincing evidence that child who is the subject
of the suit was removed as a result of the abuse or neglect of parent) (citing In re A.A.A., 265, S.W.3d 507, 512–516 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied)).  We previously have held that
evidence of abuse or neglect of a sibling does not support termination under
section 161.001(1)(O).  See Mann, 2009 WL 2961396, at *6–7.  

Here, DFPS argues that the conduct
of M.R. towards her daughter Y.C., E.C.R.’s sibling, supports the trial court’s
finding that E.C.R. was removed from M.R.’s care as a result of abuse or
neglect.  While M.R’s abusive conduct
toward Y.C. may have jeopardized E.C.R.’s well-being and served as evidence to
support termination under section 161.001(1)(E), it is not evidence that E.C.R.
actually sustained abuse or was neglected by M.R.  See
Tex.
Fam. Code Ann. 
§ 161.001(1)(E); See Mann, 2009 WL 2961396, at *6 (citing Cervantes-Peterson v. Tex. Dep’t of Family and Protective Services, 221 S.W.3d 244,
253 (Tex. App.—Houston [1st Dist.] 2006, no
pet.)); see also In re D.M., 58 S.W.3d 801, 811 (Tex. App.—Fort Worth 2001, no pet.) (proving the element
of a parent’s endangering act under section 161.001(1)(E) “may be satisfied by
showing the parent in question engaged in a course of conduct that endangered
the child’s physical or emotional well-being”). 
Thus, M.R.’s abuse of Y.C. cannot be considered evidence that M.R. abused
or neglected E.C.R. under section 161.001(1)(O).   

DFPS argues that three other pieces of evidence support termination under
section 161.001(1)(O): (1) temporary orders signed by the trial judge on July
8, 2010 finding “danger to the physical health or safety” of E.C.R., as well as
“a substantial risk of a continuing danger if the child is returned home,” (2) the
language in the August 2, 2010 Family Service Plan that shows M.R. was, at that
time, living on the streets and did not have family or friends who could assist
her, and (3) Etinfoh’s testimony that E.C.R. was behind in his immunizations
and M.R. “was not taking care of his medical needs.”  In In re A.A.A., we stated that
whether a child was removed due to the abuse or neglect of the parent should be
determined on a case-by-case basis.  In re A.A.A., 265 S.W.3d at 515.  Because
other cases are instructive in making this determination, we will examine previous
courts of appeals holdings.  See Mann,
2009 WL 2961396, at *6.  

The cases in which courts of appeals have concluded that the evidence was
sufficient to find that a child’s removal was based on abuse or neglect contain
specific allegations of neglect or abuse in the record.  In In
re M.G., the Fourteenth Court of Appeals found that the evidence was
sufficient to terminate a mother’s parental rights to her child under section 161.001(1)(O),
in part, because the initial intake report stated that “appellant was mentally
and physically neglectful of M.G.”  In re M.G., 2009 WL 3818856, No.
14-09-00136-CV, at *8 (Tex. 
App.—Houston [14th Dist.] 2009, no
pet.) (mem. op).  Other
evidence included a statement from a DFPS worker that while speaking to the
mother on the phone the mother seemed unconcerned with M.G.’s cries that the
DFPS worker could hear in the background. 
Id. at *8.  In addition, DFPS showed that the mother had
kicked out windows on a public bus while M.G. was present, and that doctors had
diagnosed the mother as having “paranoid concerns” and delusions that could be
detrimental to M.G.’s development.  Id. 
In In re E.S.C., the Dallas Court of Appeals determined that the
evidence was sufficient to support termination of a mother’s parental rights to
four siblings under section 161.001(1)(O) in a case in which DFPS’s referral
explicitly alleged negligent supervision of the children.  In re
E.S.C., 287 S.W.3d 471, 473, 475 (Tex. App.—Dallas 2009, pet. denied).  The
record in E.S.C. also demonstrated
that the mother’s mental condition prior to removal caused her to suffer visual
and audio hallucinations, and “suicidal, homicidal ideations.”  Id.
at 473.  She did not know where two of
her children resided and had no one to care for the children while she was
hospitalized.  Id.  The trial court also was
presented with detailed evidence regarding the medical condition of the
children, including evidence that one child had impetigo, a staph infection,
and hair loss, and that the mother had not sought treatment for any of these
conditions.  Id. at 475.  Finally, in In re S.N., our sister court concluded
the evidence was sufficient to support termination of a mother’s parental
rights under section 161.001(1)(O) when the record demonstrated that she left her
children home alone for hours, and officers who arrived at the home found a
soiled mattress, cat feces overflowing from litter boxes, the sink overflowing
with dirty dishes, and spoiled milk in the refrigerator.  In re
S.N., 287 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.)

By contrast, in Mann v. DFPS, this
court reversed a termination decree under section 161.001(1)(O) because there
was insufficient evidence of abuse or neglect of the child.  See Mann, 2009 WL 2961396, at
*7.  The evidence in Mann, as in this case, demonstrated that the mother had abused an
older sibling.  Id.  DFPS showed
the mother failed to obtain prenatal care until she was ordered to do so in the
seventh month of pregnancy, failed to comply with the service plan ordered in a
case involving another one of her children, and failed to secure housing at the
time of the child’s birth.  Id.  But the caseworker in Mann
testified that upon entering DFPS care, the child was healthy, had not been
abused or neglected, and had been removed due to risk rather than actual abuse
or neglect.  Id. at *6.  Similarly, in In re S.A.P., a DFPS caseworker testified
that the child had not been removed for abuse or neglect but rather because of
a risk of harm to the child as a result of the parent’s conduct towards the
child’s siblings.  In re S.A.P., 169 S.W. 3d
685, 705–706 (Tex.
App.—Waco 2005, no pet.)  The Waco Court of Appeals reversed, holding
there was no evidence to support termination of S.A.P. under section 161.001(1)(O).  Id.  

Here, as in Mann, the
caseworker testified that the child was removed as a result of risk of abuse
due to abuse of his older sibling. 
Unlike the evidence presented in In
re M.G. and In re E.S.C., the
evidence here does not show neglect or negligent supervision of the child as a
reason for DFPS involvement.  See In
re M.G., 2009 WL 3818856, at *8; In
re E.S.C., 287 S.W.3d at 473.  While Etinfoh testified that E.C.R. was “very behind” in
his immunizations when he came into DFPS custody, the record does not show that
this factor or any other allegation of abuse or neglect of E.C.R. led to E.C.R.’s
removal.  In fact, the Family Service Plan and
Etinfoh’s testimony both show that DFPS became involved as a result of M.R.’s abuse
of E.C.R.’s sibling, a factor that the court could not consider in reaching a
finding under section 161.001(1)(O).  See Mann, 2009 WL 2961396, at *6.  

DFPS also points to the Family Service Plan that shows as of August 2,
2010, M.R. was living on the streets and did not have a support system as
evidence of her abuse or neglect of E.C.R. 
In Mann, this court held that
the mother’s failure to obtain housing at the time of the child’s birth did not
establish abuse or neglect because the child was staying at his
great-grandmother’s house, and the record did not reflect frequent relocation
during time the mother was caring for the child, or that child was exposed to unsafe
or unsanitary conditions.  See Mann, 2009 WL 2961396, at *7.  The language
in the Family Service Plan here stated that M.R. was “currently” living on the
streets “as of” August 2, 2010.  The plan
was written over one month after E.C.R.’s initial removal from M.R., on or
about June 25, 2010, and almost one month after the adversary hearing on July
8, 2010, in which DFPS was given temporary conservatorship of E.C.R.  Even considering the language in the Family
Service Plan along with Etinfoh’s testimony that M.R. told her that “last year”
that she was “moving house to house,” these statements, without more detail as
to when this occurred or whether it was E.C.R. as opposed to M.R. that was in
an unsafe or unstable living environment, cannot be considered evidence of
abuse or neglect of E.C.R.

          Examining all of the evidence in the
light most favorable to the trial court’s judgment and disregarding all
evidence the factfinder could have reasonably disbelieved or found incredible,
we hold that a reasonable factfinder could not have formed a firm belief or
conviction that E.C.R. was removed from M.R.’s care as a result of M.R.’s abuse
or neglect of E.C.R.  We hold that the evidence is legally
insufficient to support termination of M.R.’s under section 161.001(1)(O).  

          We
sustain M.R.’s first issue.

C.   Alternative grounds for termination urged
by DFPS

          DFPS
requests that this court consider two cross points and affirm the termination
of M.R.’s parental rights under either section 161.001(1)(L) or section 161.001(1)(E),
the two other grounds for termination pleaded in DFPS’s original pleadings.  Although DFPS sought termination under these
two provisions in its original petition, the trial court did not terminate M.R.’s
rights under either of them.  

          In
Vasquez, we held that “a parental
rights termination order can be upheld only on grounds both pleaded by [DFPS]
and found by the trial court.”  Vasquez v. Texas Dep’t of Protective &
Regulatory Servs., 190 S.W.3d 189, 194 (Tex. 
App.—Houston [1st Dist.] 2005,
pet. denied).  DFPS asserts that the
Legislature’s recent repeal of Texas Family Code section 263.405(i) means that
we are now free to consider cross appeals such as these.[1]  We agree with DFPS that with the repeal of
Texas Family Code section 263.405(i), appellate courts are now permitted to
review points raised on appeal that were not included in a statement of
appellate points.  But we disagree with
DFPS’s conclusion that the repeal of section 263.405(i) means we are free to
uphold termination based on findings not made by the trial court.  See
Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332,
332, repealed by Act of May 5, 2011,
82nd Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349.  The repeal of Texas Family Code section
263.405(i) does not affect our holding in Vasquez,
and we reaffirm that “a parental rights termination order can be upheld only on
grounds both pleaded by the [DFPS] and found by the trial court.”  Vasquez,
190 S.W.3d at 194 (stating “we decline [DFPS’s] invitation to uphold the trial
court’s termination order on a ground different from that stated in the order”);
see also Cervantes-Peterson, 221
S.W.3d at 252 (“[W]e review the sufficiency of the evidence presented under the
specific statutory grounds found by the trial court in its termination order.”).

          Because we conclude that the evidence is
legally insufficient to support termination under section 161.001(1)(O), the
sole ground on which the trial court terminated M.R.’s parental rights, we need
not reach the merits of M.R.’s second issue.

Conclusion

We reverse the portions of the decree
related to the termination of M.R.’s parental rights and render judgment
denying DFPS's petition for termination of M.R.’s parental rights.  We affirm the remainder of the judgment.

 

                                                                   Rebeca
Huddle

                                                                   Justice 

 

Panel
consists of Chief Justice Radack and Justices Jennings and Huddle.











[1]
          Former Texas Family Code section
263.405(i) stated in
part, “The
appellate court may not consider any issue that was not specifically presented
to the trial court in a timely filed statement of the points on which the party
intends to appeal or in a statement combined with a motion for new trial.”  Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1,
2005 Tex. Gen. Laws 332, 332, repealed by
Act of May 5, 2011, 82nd Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349.